# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LUIS RIVERA SIERRA,**

      **Plaintiff,**

-vs-                                                      Case No. 6:09-cv-124-Orl-19KRS

**E. NEVILLE ISDELL, et al.,**

      **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1.    Motion of Defendant Coca-Cola Enterprises, Inc. to Compel Arbitration and Dismiss Complaint (Doc. No. 35, filed May 15, 2009);

2.    Memorandum of Law in Support of Motion of Defendant Coca-Cola Enterprises, Inc. to Compel Arbitration and Dismiss Complaint (Doc. No. 37, filed May 15, 2009);

3.    Renewed Motion of Defendant Coca-Cola Enterprises, Inc. to Compel Arbitration and Dismiss Complaint (Doc. No. 53, filed June 3, 2009);[1]

4.    "Memorandum of Law in Compliance the Order Doc. 66, in Opposition the to the Doc. No. 65 and Supporting the Doc. No. 65 at 4-27: Renewed Plaintiff's Motion in Opposition to the Renewed 'Defendants Coca Cola Enterprises, Inc.'s Motion to Compel Arbitration and to Dismiss Complaint.'" (Doc. No. 67, filed July 7, 2009);[2] and

---

[1]    The Renewed Motion was filed after Plaintiff submitted an Amended Complaint.

[2]    The Court construes this document as Plaintiff's response to the Motions filed at Docket Numbers 35 and 53. The grammar and punctuation has been kept as it appears in the original.

5. Motion for Leave to File a Reply to Plaintiff's Response to the Motion to Compel Arbitration and to Dismiss Complaint (Doc. No. 70, filed July 15, 2009).

**Background**

Plaintiff Luis Rivera Sierra filed this *pro se* action against his former employer, Coca-Cola Enterprises, Inc. ("CCE"), several Coca-Cola officers and employees (and their spouses), other Coca-Cola corporate entities, various "A-Z" Coca-Cola affiliate companies, and "agents, contractors and lawyers unknowns" from the "A-Z" companies (and their spouses). (Doc. No. 44, filed May 20, 2009.) Sierra appears to allege that he was discriminated against on the basis of his race and his age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2006), and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34 (2006). (Doc. No. 44 ¶ 1.) He appears to also state several state law tort claims, although it is unclear against whom. (*Id.* ¶ 96.) Defendant CCE has filed a Motion to Compel Arbitration, arguing that Sierra is bound by an agreement to arbitrate his claims against it. (Doc. Nos. 35, 37, 53.)

According to the affidavits and documentation provided by CCE, Sierra began working at CCE's Orlando facility in December of 2005. (Doc. Nos. 37-6, 37-7.) At the time he began employment, Sierra was provided with materials for CCE's "Solutions" program, an alternative dispute resolution program that requires both CCE and its employees to agree to arbitrate their claims against each other.[3] (Doc. No. 36-7; Doc. No. 37-5 at 1-51.) CCE bears the cost of arbitration under the program, (Doc. No. 37-2 ¶ 7), and the program requires CCE to reimburse certain legal

---

[3] Sierra was provided with an amended version of the program in May of 2006. (Doc. No. 37-2 ¶ 15.) The amended version does not differ from the original program in any respect relevant to this case.

expenses that an employee incurs while pursuing his or her rights under the program, (Doc. No. 37-5 at 10, 44-45). The program covers "legal disputes" between the employee and employer, a term defined to include: "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons and/or entities bound by this Program or by an agreement to resolve Conflicts under this Program." (*Id.* at 3.) The program states that "assent" to enter the agreement is manifested by the employee's decision to continue employment after the effective date. (*Id.* at 11.) On December 7, 2005, Sierra signed an acknowledgment that he read and understood the program documentation.[4] (Doc. No. 37-7 at 1.)

CCE now moves to enforce the agreement. In response, Sierra makes a litany of arguments, not all of which are entirely clear.[5] The Court, however, has gleaned the following arguments from his Memorandum:

- The agreement to arbitrate is revocable because it is not signed by both parties. (Doc. No. 67 at 2.)

- The agreement is fraudulent. (*Id.*)

- The agreement is a unilateral promise from Sierra. (*Id.*)

---

[4] A line resembling marker or a dark highlighter appears through the spots on the form on which Sierra printed and signed his name. (Doc. No. 37-7.) In his Motion, Sierra states: "Due to the signature of the document was crashed, and not any explanation was provided, the Plaintiff can not determine if that is their real signature." (Doc. No. 67 at 5. n. 7.) It is not clear what Sierra means by this. However, the Court notes that, irrespective of the line, Sierra's name is clearly visible. Further, Sierra does not appear to deny signing this form.

[5] The Memorandum of Law is twenty-three pages long with eighty-four paragraphs. (Doc. No. 67.) It has no discernable organization, and many sentences lack proper grammar and spelling. The Court has done its best to interpret the document in light of the leniency provided to *pro se* litigants.

- The agreement itself is discriminatory to African Americans, Latinos, and "[f]oreigners." (*Id.* at 3.)

- CCE has acted contrary to its own agreement by refusing to engage in alternative dispute resolution with Sierra. (*Id.* at 5.)

- The agreement lacks the "basic elements" of a contract, such as terms, conditions, a severability clause, sanctions, and "dated to be executed or statute of limitation . . . ." (*Id.*)

- Sierra did not assent to the agreement, as evidenced by the lack of a signature anywhere on the program document itself. (*Id.*)

- Sierra was rushed through his review of the document, in his words: "Brought the preprinted document and put the Plaintiff to sign it in order to get the job, mean while a trainer waiting for them to start the route of the day, and Jerry rush them to finish without read." (*Id.* at 6.)

- CCE's enforcement of the agreement violates the doctrine of laches. (*Id.* at 13.)

- Sierra received a right-to-sue letter from the EEOC which confers jurisdiction on this Court. (*Id.* at 15.)

**Analysis**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements. "The FAA embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted). As provided by the Act, when a party moves a court to compel arbitration pursuant to an arbitration agreement:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the

> failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. . . .

9 U.S.C. § 4. Through this provision, Congress expressly assigned the duty of deciding issues concerning the "making of the arbitration agreement" to the courts. *Id.*

Sierra's arguments why the agreement should not be enforced appear to fall along three lines: (1) that no valid contract to arbitrate was formed; (2) that the contract, if one exists, is unconscionable; and (3) that the contract cannot be enforced in this proceeding because CCE has waived its rights through its failure to engage Sierra in alternative dispute resolution, the doctrine of laches applies, and the EEOC's right-to-sue letter gives jurisdiction to this court to hear the claim.[6]

## I. Whether a Valid Arbitration Agreement Exists

"Arbitration under the [FAA] is a matter of consent, not coercion . . . ." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). The United States Supreme Court has explained that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis and alterations in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Thus, a court should

---

[6] It appears that Sierra does not contend that his claims fall outside the scope of the arbitration agreement. Even if he did make this argument, the plain definition of "legal dispute" clearly encompasses his Title VII, ADEA, and state law claims. (Doc. No. 37-5 at 3.)

decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all . . . ." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *accord Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 853-56 (11th Cir. 1992).

When determining whether a valid arbitration agreement exists, a court should consider both federal policy and applicable state contract law. As the Eleventh Circuit has explained:

> The FAA preempts state law to the extent it treats arbitration agreements differently than other contracts. The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts. However, state law generally governs whether an enforceable contract or agreement to arbitrate exists. Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.

*Caley*, 428 F.3d at 1367-68 (citations and quotation marks omitted); *see also Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements.").

Taking into account the general federal policy favoring arbitration, the Eleventh Circuit has found that when a party denies the existence of a valid arbitration agreement, "that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Chastain*, 957 F.2d at 855. "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists." *Id.* Rather, the Eleventh Circuit held, "To make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Id.* at 854 (alterations omitted) (quoting *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)).

Sierra does not meet his burden to demonstrate the non-existence of an agreement to arbitrate. The fact that the program document was not "signed" by either party is irrelevant; "assent" to enter the agreement is established through the parties' decisions to continue the employment relationship after the agreement's effective date. (Doc. No. 37-5 at 11.) Further, despite his arguments, Sierra has presented no evidence that his assent was procured through fraud, and the Court's review of the document confirms it does not lack any term essential to create a binding contract.[7] In sum, the parties' actions represent the "mutual assent" necessary to form a contract, *see Holloway v. Gutman*, 707 So. 2d 356, 357-58 (Fla. 5th DCA 1998) (explaining the concept of mutual assent), and the terms of that contract are clearly laid out in the "Solutions" program document.

## II.  Whether the Agreement is Unconscionable

Under Florida law,[8] Sierra has the burden of establishing that the arbitration provision is both "procedurally" and "substantively" unconscionable. *Murphy v. Courtesy Ford, LLC*, 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006). Procedural unconscionability concerns the manner in which a contract was made and turns on the bargaining power of the parties and their ability to understand the relevant terms. *Id.*; *U.S. EEOC v. Taco Bell of Am., Inc.*, 8:06-cv-1792, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007). Specifically, the court determines whether the parties had a realistic opportunity to bargain, whether the terms were presented on a "take-it-or leave-it" basis, and

---

[7]    For instance, the agreement expressly recites the consideration received by each party, (Doc. No. 37-5 at 11-12), even though this requirement could be inferred from the continuation of the parties' at-will employment relationship.

[8]    Florida law, construed liberally in favor of enforcement, provides the substantive law governing unconscionability. *See Caley*, 428 F.3d at 1367-68.

whether each party had a reasonable opportunity to understand the terms. *Taco Bell of Am., Inc.*, 2007 WL 809660, at *1 (citing *Murphy*, 944 So.2d at 1134).

Substantive unconscionability turns on the agreement itself, considering whether the disputed terms "limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *Id.* An agreement will be found substantively unconscionable only if the terms are "so outrageously unfair as to shock the judicial conscience." *Id.* (quoting *Bland ex. rel. Coker v. Health Care & Retirement Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006)). Some Florida cases have utilized a balancing test whereby a great degree of substantive unconscionability, coupled with a quantum of procedural unconscionability, may render an agreement invalid. *Id.* at *3 (citing *Orkin Extermination Co., Inc. v. Petch*, 872 So. 2d 259, 265 (Fla. 2d DCA 2004)).

Again, Sierra fails to meet this burden. Some evidence of procedural unconscionability exists, as it almost always does when an employer presents a new hire with a "take-it-or-leave-it" arbitration agreement. *E.g.*, *Henry v. Pizza Hut of Am., Inc.*, No. 6:07-cv-01128-Orl-19DAB, 2007 WL 2827722, at *4-7 (M.D. Fla. Sept. 27, 2007) (evaluating an arbitration agreement between Pizza Hut and a delivery man); *Taco Bell of Am., Inc.*, 2007 WL 809660, at *2 (discussing cases). In this instance, it is clear that Sierra did not sit down with CCE's lawyers and bargain over the terms of the agreement. At the same time, however, common sense dictates that requiring such person-to-person negotiation in every case would be impractical, and it would also invalidate the majority of employment arbitration agreements. Although actual negotiation does not exist in every instance, the law assumes that the labor market allows such negotiation to take place on the aggregate level, much like the fact that the price of bananas responds to consumer demand even though customers

do not actually bargain with the supermarket at the register. *See, e.g.*, *Caley*, 428 F.3d at 1377-78 (noting that a bargaining disparity is common in the employment context); *Oblix, Inc.v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) ("Standard-form agreements are a fact of life, and given [section] 2 of the Federal Arbitration Act, 9 U.S.C. § 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals."). Thus, the lack of negotiation in this case represents some degree of procedural unconscionability, but it is neither unusual nor compelling.

Likewise, the fact that Sierra claims to have been hurried through his review of the document is limited, but not compelling, evidence of procedural unconscionability. Sierra does not argue, as far as the Court can tell, that he was not provided an opportunity to read the document, *c.f.*, *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So.2d 990, 991-93 (Fla. 4th DCA 2004) (invalidating an arbitration clause that appeared on the back page of a contract, was not initialed by the customer despite a space for the customer's initials, and was not brought to the attention of customers), and Sierra did not object when an amended version of the document was mailed to his home. The program document itself is written in plain English, contains very little legalese, and features explanatory sentences above each substantive provision.[9] As a result, there is no evidence from which the Court can conclude that Sierra did not have the opportunity to review and understand the document.

---

[9] Sierra states in the Amended Complaint that he has a college degree from the University of Puerto Rico and Inter-American University of Puerto Rico, (Doc. No. 44 ¶ 7), and he appears to understand the basic concepts associated with legal doctrines such as laches. There is no evidence that he is not sophisticated enough to understand the terms of the contract.

More importantly, there is no evidence of substantive unconscionability. The United States Supreme Court has soundly rejected the idea that mandatory arbitration itself is unfair or biased, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-31 (1991), and the terms of this particular agreement are very much two-sided. Both employer and employee are bound to arbitrate their claims, (Doc. No. 37-5 at 1-4), the agreement preserves all substantive rights available to the party, (*id.* at 7-8), and it even requires CCE to bear the arbitration fees and reimburse the employee for some legal expenses, (*id.* at 10, 32, 44-45).

On the whole, the facts demonstrate no substantive unconscionability and only a slight degree of procedural unconscionability. Accordingly, the agreement is not unconscionable under Florida law.

### III.    Other Arguments Pertaining to Enforceability

Sierra lastly argues that the agreement cannot be enforced in this proceeding because CCE has waived its rights through its failure to engage Sierra in alternative dispute resolution, the doctrine of laches applies, and the EEOC's right-to-sue letter gives jurisdiction to this Court to hear the claim. The arguments concerning waiver and laches are misplaced. Even if these equitable concepts are applied to actions to enforce an arbitration agreement under the FAA, no equitable reason exists to refuse enforcement of Sierra and CCE's agreement. Sierra does not clearly explain the history of his dispute with CCE, but the period between the end of Sierra's employment and the date on which CCE moved to compel arbitration is short enough that a laches defense cannot reasonably apply. *E.g.*, *Miami-Dade County v. Fernandez*, 905 So. 2d 213, 216 (Fla. 3d DCA 2005) ("Laches is an omission to assert a right for an unreasonable [ ] length of time, under circumstances prejudicial to the adverse party." (citation omitted; alteration by *Fernandez* court)). Similarly, even

if Sierra is correct that CCE did not engage him to resolve his claim, there is no provision in the agreement suggesting that either party waives the right to arbitration by failing to immediately invoke the agreement's alternative dispute resolution procedures. Finally, Sierra's right-to-sue letter has no bearing on arbitrability; the Court has subject matter jurisdiction over Sierra's claims irrespective of the letter, *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061-62 (11th Cir. 1994), but a separate federal statute, the FAA, has divested Sierra of the right to litigate his claim against CCE in this forum.[10]

## Conclusion

The Renewed Motion of Defendant Coca-Cola Enterprises, Inc. to Compel Arbitration and Dismiss Complaint (Doc. No. 53, filed June 3, 2009) is **GRANTED**, and the Motion of Defendant Coca-Cola Enterprises Inc. to Compel Arbitration and Dismiss Complaint (Doc. No. 35, filed May 15, 2009) is **DENIED as moot**. The Motion of Coca-Cola Enterprises, Inc. for Leave to File a Reply to Plaintiff's Opposition to the Motion to Compel Arbitration (Doc. No. 70, filed July 15, 2009) is **DENIED as moot**. The Court **STAYS** the instant case with respect to Defendant Coca-Cola Enterprises, Inc. and **ORDERS** the parties within fifteen (15) days from the date of this Order to submit Plaintiff's claim to arbitration pursuant to the arbitration agreement.[11] Thereafter the

---

[10] The Court has no occasion to decide the propriety of Sierra's claims against the multitude of other defendants he has named in this action. However, Sierra should be on notice that Federal Rule of Civil Procedure 11 requires him to have a basis in law and fact for his claims against each defendant. Only employers can be liable under Title VII and the ADEA, *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007), and the Court is unaware of any case law or statute making the spouses of corporate employees and officers liable for the corporation's wrongdoing. That being the case, Sierra is advised to reevaluate the claims he has asserted in light of the sanctions which nay be imposed against a Plaintiff who files a lawsuit against a Defendant without basis in fact and law.

[11] The case is not stayed with respect to the remaining Defendants.

parties shall file a status report within ninety (90) days from the date of this Order and every ninety (90) days thereafter advising the Court of the status of the arbitration and what, if any, further relief is sought in this forum. Failure to comply with this Order may result in sanctions, including but not limited to dismissal of the case, without further notice.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on July 21, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party